**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

_____

| | | |
|---|---|---|
| Patricia A. Fox, | : | |
| Plaintiff, | : | |
| | : | |
| | : | |
| v. | : | **COMPLAINT** |
| | : | |
| THE COUNTY OF YATES, SHERIFF RONALD | : | |
| G. SPIKE, both individually and in his official | : | |
| capacity as Sheriff of Yates County, and | : | |
| UnderSheriff JOHN C. GLEASON, both individually | | |
| and in his official capacity as UnderSheriff | | |
| Yates County  LIEUTENANT CLAY RUGAR, | | **JURY TRIAL** |
| both individually and in his official capacity as Jail | | **DEMANDED** |
| Administrator of the Yates County Jail, | | |
| | : | |
| Defendants. | : | |

_____:

## INTRODUCTION

This is a civil rights action in which the Plaintiff, Patricia A. Fox, seeks relief for the Defendants' violation of her rights secured by 42 U.S.C. §1983, 1985 et. al, and of her rights secured by the Fourteenth Amendment of the United States Constitution, and the rights secured under the laws and Constitution of the State of New York.  Defendants', Yates County, Yates County Sheriff's Department; Sheriff Ronald G. Spike, both individually and in his capacity as Sheriff of Yates County; UnderSheriff Gleason and Lieutenant Clay Rugar, both individually and in his official capacity as Jail Administrator actions are alleged to have taken place under color of state law.  The Plaintiff(s) seeks damages, both compensatory and punitive, affirmative and equitable relief, and award of costs and attorney's fees, and such other and further relief, as this Court deems equitable and just.

## JURISDICTION

1.      This Court has jurisdiction over this action under the provisions of 28 U.S.C. §§ 1331, & 1343 because it is filed to obtain compensatory damages, punitive damages, and injunctive relief for the deprivation, under color of state law, of the rights

of citizens of the United States secured by the Constitution and federal law pursuant to 42 U.S.C. §1983 and 1985.

2.      Venue is proper under 28 U.S.C. § 1391(e)(2) because the events giving rise to Plaintiff's claims and those of proposed class members occurred in this judicial district.

## PARTIES

3.      Plaintiff, Patricia A. Fox, resides in Yates County, New York.

4.      Defendant, County of Yates, is a county government organized and existing under the laws of the State of New York with a principle place of business at 227 Main Street, Penn Yan, New York.

5.      At all times relevant hereto, the County of Yates, acting through its Sheriff's Department, was responsible for the policies, practices, supervision, implementation and conduct of all matters pertaining to the Yates County Jail  and was responsible for the appointment, training, supervision and conduct of all Sheriff's Department personnel, including those working in the Yates County Jail . In addition, at all relevant times, the County was responsible for enforcing the rules of the Yates County Jail, and for ensuring that Sheriff's Department personnel employed in the Jail obey the Constitution and laws of the United States and of the State of New York.

6.      The Yates County Sheriff's Department (YCSD) is a County Sheriff's Department organized and existing under the laws of the State of New York. Although not a legal entity for the purposes of litigation, the Department is listed as a party for the purposes of identification. At all times relevant hereto, the YCSD was responsible for operating, organizing, overseeing and administering the Yates County Jail (YCJ). At all times relevant hereto, Defendant, YCSD, as an administrative arm of the County of Yates, was responsible for the polices, practices, supervision, implementation and conduct of all matters pertaining to the Yates County Jail (YCJ), and was responsible for the appointment, training, supervision and conduct of all Sheriff's Department personnel, including those working in the YCJ.  In addition, at all times relevant hereto, Defendant, YCSD, as an administrative arm of the County of Yates, was responsible for enforcing the rules of the YCJ, and for ensuring that YCSD personnel employed in the YCJ obeyed the Constitution and laws of the United States and of the State of New York.

2

7.    Defendant, Ronald G. Spike, ("Sheriff Spike") is the duly elected Sheriff of Yates County, and, as such, is a policy maker with respect to the treatment of pre-trial and other detainees over which the Jail exercises custodial or other control. Sheriff Spike's principal place of business is 227 Main Street, Penn Yan, New York 14527-1720. Sheriff Spike is made a Defendant in this action in both his individual and official capacities.

8.    Defendant, John C. Gleason, (UnderSheriff) is the duly appointed UnderSheriff to who all employees of the Jail under the administration of Lieutenant Rugar and all the employees of the criminal sector under Lieutenant Sotir's report. UnderSheriff Gleason principal place of business is 227 Main Street, Penn Yan, New York14527-1720.   UnderSheriff Gleason is made a defendant under this action both in his individual and official capacities.

9.    Defendant, Clay Rugar, ("Lieutenant Rugar") is the duly appointed Jail Administrator of Yates County and, as such, is a policy maker with respect to the treatment of pre-trial and other detainees over which the Jail exercises custodial or other control. Jail Administrator Rugar's principal place of business is 227 Main Street, Penn Yan, New York 14527-1720. Administrator Rugar is made a Defendant in this action in both his individual and official capacities.

## FACTS

10.    Plaintiff served as a probationary (corrections officer hereinafter "C.O.") for the YCSD from 2002 to July 4, 2004.  Thereafter she was permanent appointee under the Civil Service Law (CSL) of the State of New York.

11.    Prior to October of 2007, Plaintiff had never been subject to any prior disciplinary proceeding and had an excellent work history as a C.O. in the YCJ.

12.    The facts set forth below outline wide spread corruption, intimidation, violation of constitutional rights of employees, malice in the arrest and prosecution of Plaintiff and unlawful and unconstitutional policies, procedures and regulations of the YCJ under the direction of Sheriff Spike, UnderSheriff Gleason, Lieutenant Rugar and other employees under their command.

**The "Circle" and/or "Good old boys"**

13.     The term the "Circle" and or "Good old boys" (hereafter referred to as the "Circle") are well-known terms used and known by C.O.s within the YCJ.  Both terms are synonymous to a select group of male C.O.s, Sergeants, Lieutenant Rugar, UnderSheriff Gleason and Sheriff Spike.

14.     C.O.'s within the YCJ have come to understand that members of the Circle receive preferential treatment and as a group they have imposed their collective efforts to violate statutory and constitutional rights of female C.O.'s.

**Criminal conduct at the YCJ reported by Plaintiff:**

**A.  Stolen Medication by C.O. Kim Whitford**

15.     At all relevant time from 2004-2007, Plaintiff was legally prescribed Vicodin for an injury she sustained.

16.     While on duty at the YCJ, Plaintiff secured her medication with her personal belongings in the break room for C.O.s.

17.     In 2005 Plaintiff noticed a significant quantity of her medication was missing while Plaintiff was working.

18.     Plaintiff reported the missing medication to her supervisory senior officer in charge (OIC).

19.      After an internal investigation, C.O. Kim Whitford was criminally charged with the theft of medication.  Upon information and belief, the criminal charges where favorably disposed of after the acceptance of her resignation from the YCJ based upon her relationship with the Circle.

20.     At all relevant times Sergeant Chad Gridley has been and continues to be a member of the Circle.  At the time of the above events Sergeant Gridley, was having an intimate relationship with C.O. Whitford (they later married).

21.     Subsequent to the above-mentioned matter, Plaintiff was informed by fellow C.O.s that Sergeant Gridley and other members of the "circle" were conspiring to terminate her position as a C.O. at the YCJ.

**B. Acts of Sex and Viewing Porn in the YCJ Reported by Plaintiff**

22.     While working the night shift (11pm through 7am) at the YCJ, Plaintiff noticed that a female C.O. and a male Sergeant who was known to be a member of the

Circle, would continuously seclude themselves in various rooms (particularly the commissary room) at the YCJ while on duty.

23.     Based on the sounds coming from the room Plaintiff knew the Sergeant and female C.O. were engaging in sexual intercourse.

24.     Plaintiff further noticed the two and other C.O.s accessing porn sites on the YCJ's computer during their work shifts.

25.     Plaintiff reported the above conduct to her supervisory Sergeant who, upon information and belief, verbally warned the Sergeant to consider the consequences of his conduct.   Subsequent to the verbal warning the offending Sergeant and female C.O. began to harass Plaintiff for reporting them but continued their illicit conduct while working at the YCJ.

26.     Plaintiff reported the harassment and above-mentioned illicit behavior to Lieutenant Rugar on or about July 2006.  Lieutenant Rugar informed Plaintiff that there was no evidence of the conduct.

27.     After her meeting with Lieutenant Rugar, Plaintiff began documenting her observations of the continued illicit behavior including use of tape recorder to record some of these incidences which totaled over 50 pages of hand written notes of events documenting the continued conduct that Lieutenant Rugar refused to investigate.

28.     Plaintiff provided the 50 pages of notes of the illicit conduct to Lieutenant Rugar and/or UnderSheriff Gleason on or about November 29, 2006.

29.     Lieutenant Rugar and UnderSheriff Gleason orally agreed to not disclose the information provided by Plaintiff or Plaintiff's identity to the sergeant and C.O. involved.

30.     In an effort to expose Plaintiff as a whistleblower Undersheriff Gleason and/or Lieutenant Rugar breached their oral promises to Plaintiff and provided the male Sergeant and the female C.O. with copies of Plaintiff's 50 pages of hand written notes and identified Plaintiff as a source of the information.

31.     Subsequent to Plaintiff being exposed she was subjected to constant harassment by the male Sergeant and the female C.O.'s and other C.O.'s.

32.     Plaintiff was also assigned to duty in the "dorm" which is a secluded part of the Jail by the Circle.

33.    In addition to being harassed, Plaintiff was subjected to malicious and false reports (Plaintiff intoxicated while working) by the female C.O. involved in the illicit conduct.

34.    Allegations against Plaintiff were investigated by a sergeant who was a certified breath test operator and trained in the detection of the effects of alcohol upon individuals.

35.    The Sergeant's investigation found the allegations regarding Plaintiff were baseless and unfounded.

36.    Plaintiff's superiors including but not limited to UnderSheriff Gleason, Lieutenant Rugar, Sergeant Chad Gridley, and other members of the Circle all knew the allegations against Plaintiff were determined to be unfounded; and knew or should have known the allegations were retaliation for Plaintiff's reporting the above mentioned misconduct.

37.    The sergeant who investigated the Plaintiff for the malicious reports informed Plaintiff to "watch her back" after his investigations of several unfounded complaints since he was aware of the methods used by the circle to retaliate against whistleblowers for breaking the unwritten "code of silence."

38.    UnderSheriff Gleason, Lieutenant Rugar, Sergeant Chad Gridley, and other members of the Circle refused to stop the retaliatory conduct against Plaintiff.

39.    UnderSheriff Gleason, Lieutenant Rugar, Sergeant Chad Gridley, and other members of the Circle knew or should have known that their release of Plaintiff evidence and identity as a whistleblower and the inaction to suppress false accusations directed at Plaintiff at the YCJ and violated the oral contract which Plaintiff believes to be a significant property right protested by the constitution.

**First Cause of Action**
**Municipal Liability Violated**
**42 U.S.C. §1983**

40.    Plaintiff repeat and reallege each and every allegation contained in paragraphs 1 through 39 as if fully set forth herein.

41.    At relevant times the YCJ had a policy that requires C.O.s' to begin work ten to fifteen minutes before their reported shift (paid time) commences.    During this

unpaid work, reporting C.O.'s must facilitate the "count" (counting of inmates in cell blocks and the necessary book entries).

42.    At all relevant times the Sheriff had and continues to have a General Order contained in GO-8-96.

43.    Paragraph number two (2) of the Order required all "members below rank of Sergeant" to obtain a Sergeant's written approval for overtime already worked in order to be paid.

44.    Is was well known in the YCJ that this process of obtaining written approval for overtime already worked was and continues to be selectively and discriminatorily granted by members of the Circle.

45.    At all relevant times the Sheriff had and continues to have a policy, which required C.O.s to document their daily and weekly total time worked (regular and overtime) on their time cards even though the time cards showed the time punched in (commencing their work) and out (ending their work).

46.    The YCSD requirement of seeking approval for overtime already worked allows for the illegal practice to occur wherein in Sergeants are vested with authority to deny payment for work already completed thereby enhancing the powers of the Circle over C.O.s.

47.    The Fair Labor Standard Act (FLSA) sets forth the right of all workers to be compensated for overtime work completed in the course of employment for their employer.

48.    The above stated municipal policy was deliberately used to deprive Plaintiff of compensation for worked overtime.  Furthermore, this municipal policy was deliberately used to criminally prosecute Plaintiff as set-forth below.

## Second Cause of Action
## Malicious Prosecution Under 42 U.S.C. §1983

49.    Plaintiff repeat and reallege each and every allegation contained in paragraphs 40 through 48 as if fully set forth herein.

50.    Subsequent to the above efforts to get Plaintiff to resign her position as a C.O.  members of the Circle conspired to find a way to terminate Plaintiff's position as a C.O.

51.     It was well known by members of the Circle that Plaintiff frequently was asked and accepted either scheduled or unscheduled overtime work, which was above and beyond the overtime worked by a C.O. reporting early for the "count".

52.     Members of the Circle conspired to use the above-mentioned YCJ illegal policy (obtaining written approval for overtime worked) to terminate Plaintiff.

53.     On or about July through September, 2007 members of the "circle" conspired to investigate all aspects of Plaintiff's work at the Jail in an effort to seek her removal as a vested C.O. with the YCJ.   One of those efforts was to copy her time card on a daily basis.

54.     Plaintiff worked overtime August 16 through 17, September 3 through 4, 17 and 27, of 2007.

55.     Plaintiff requested and received overtime pay for the above-mentioned worked overtime.

56.      Plaintiff failed to follow the YCJ policy of seeking sergeant approval for overtime already completed for the above-mentioned dates.

57.     The members of the circle specifically, Sheriff Spike, Undersheriff Gleason and Lieutenant Rugar, directed Criminal Investigators Sotir and Backer to question Plaintiff regarding her failure to seek sergeant approval.

58.     Prior to questioning Plaintiff, Sheriff Spike, Undersheriff Gleason, Lieutenant Rugar, Criminal Investigators Sotir and Backer, and other members of the Circle all knew or should have known that Plaintiff worked the overtime on all four separate occasions on August 16 through 17, September 3 through 4, 17 and 27, of 2007.

59.     The YCJ timecard machine that imprints a "punched in" and "punched out" time which documented and validated Plaintiff's request for the above-mentioned overtime.

60.     The total amount of money paid to Plaintiff for the four above-mentioned overtime periods amounted to less than sixty dollars ($60.00).

61.     At all times relevant there never was any evidence that Plaintiff did not work the overtime.

62.    During the questioning of Plaintiff by Criminal Investigators Sotir and Backer, Plaintiff admitted not following the YCJ policy but continuously maintained that she worked the overtime.

63.    After discussing this matter with Plaintiff, the investigators made inquiry with Lieutenant Rugar as to what was to be done with Plaintiff.    Upon information and belief, Jail commanding officers, Sheriff Spike and/or UnderSheriff Gleason, and/or Lieutenant Rugar directed the investigators to commence a criminal prosecution against Plaintiff.

64.    Investigator Backer prepared a felony complaint charging Plaintiff with the felony of Falsifying a Business Record, in the first degree in that "between August and September, 2007 while employed in the Yates County Jail" Plaintiff did alter her time cards to show additional overtime hours resulting in her receiving $54.30 which she was not entitled to and, in addition thereto, filed one count of Petit Larceny, a misdemeanor, alleging that Plaintiff stole $54.30 from the County of Yates, the amount of overtime.

65.    While Plaintiff was being fingerprinted at the YCJ for these criminal charges, Lieutenant Rugar handed Plaintiff a written document asking Plaintiff if she wanted to sign the documents indicating her resignation as a C.O. from the YCSD.

66.    Plaintiff refused to sign the resignation document and was then told she was suspended from duty as a C.O. at the YCJ.

67.    Plaintiff entered a not guilty plea to the above-mentioned charges on October 15, 2007 in the Penn Yan Village Court.

68.    Plaintiff subsequently requested the right to appear and testify before the Yates County Grand Jury regarding these charges.

69.    In furtherance of the conspiracy to maliciously prosecute Plaintiff, the YCSD intentionally and maliciously withheld favorable evidence or offered misleading information in the following manner:

a)    The Grand Jury was mislead to believe that Plaintiff never worked the time for which she was paid $54.30.    The indictment specifically charged that Plaintiff "with the intent to defraud….causing a false entry" on her time card with the intent to commit another crime" (larceny) stealing money from the County of Yates.

b)      The digital recording of the actual conversation between the investigators and Plaintiff was intentional and maliciously withheld from the Grand Jury.  Instead the Grand Jury was provided with a typed unsigned alleged statement which provided incomplete information specifically tailored to mislead the Grand Jury.

c)      Upon information and belief, the Grand Jury was mislead to believe that a violation of the General Order (getting a Sergeant's approval for overtime) was a violation of the Penal Statute, to wit: Falsify Filing a Business Record.

d)      Upon information and belief, the Grand Jury was never instructed that Plaintiff's time cards supported her request for overtime pay.

e)      Upon information and belief, the Grand Jury was not informed that there is a Federal Statute requiring payment for overtime worked by an employee for the employer.

70.      For the above reasons and, in addition to other facts, the presumption of probable cause does not apply to the indictment that was handed up by the Yates County Grand Jury against Plaintiff.

71.      The County of Yates, by and through members of the circle including Sheriff Spike and/or Under Sheriff Gleason, Lieutenant Rugar, Lieutenant, Sotir, Sergeant Backer participation in the investigation, arrest and prosecution of Plaintiff under the Penal Laws of the State of New York which required Plaintiff to expend great sums of money in her defense especially for a lengthy criminal trial which resulted in her complete acquittal of all six counts of the indictment after less than one hour of jury deliberation.

72.      The members of the circle further demonstrated their malice by suspending Plaintiff without pay from January 22, 2008 through the completion of the Article 75 Hearing on July 2, 2009 in an effort to deny her the financial ability to defend herself against the criminal and administrative charges filed against her which was in violation of her statutory rights under the CSL.

73.      The Circle showed malice when they increased the one (1) felony charge to five (5) counts of Falsifying a Business Record after Plaintiff refused to resign.

74.      Malice was also demonstrated by the circle's efforts to terminate Plaintiff after her acquittal on the criminal charges by continuing administrative charges which

they knew or should have known were false in an Article 75 proceeding alleging that she received compensation (pay) for time she had not worked.

75.    The Sheriff continued to demonstrate his malice toward Plaintiff when he rejected the recommendations of the Hearing Officer appointed for the Article 75 Hearing and issued an Order/Report which doubled the recommended sanction, from thirty (30) days without pay to sixty (60) days and also denied Plaintiff her back pay as recommended by the Hearing Officer without any reference to facts in the record at the Article 75 Hearing or supporting law.

76.    Lastly, the Sheriff showed malice when he directed the County Personnel Office to change Plaintiff's pension benefit anniversary date to comport with his Order/Reports.

**Third Cause of Action**
**Personal Liability of Sheriff Spike,**
**UnderSheriff Gleason and Lieutenant Rugar**
**42 U.S.C. §1983**

77.    Plaintiff repeat and reallege each and every allegation contained in paragraphs 49 through 76 as if fully set forth herein

78.    The YCSD's municipal policies, which deny overtime compensation without Sergeant's written approval was selectively enforced against C.O.s particularly C.O.s who were not in the "circle" and was used against Plaintiff with malice and as retaliation for reporting wrongdoing by members of the circle and as part of a conspiracy to remove Plaintiff from her position as a C.O. with the YCSD for being a whistleblower, conduct which is protected under New York Civil Service Law.

79.    The individuals that directly participated in the selective enforcement of the above stated municipal policies were Sheriff Spike, UnderSheriff Gleason, Lieutenant Rugar and other members of the "circle".

80.    Both Sheriff Spike and Lieutenant Rugar had been made aware of the provisions of the FLSA both in the criminal prosecution of Plaintiff and in the Article 75 proceeding and knew or should have known of the requirement of the FLSA.

81.    Both Sheriff Spike and Lieutenant Rugar failed to terminate the criminal prosecution and/or the Article 75 charges or remedy the denial of overtime payment without Sergeant's approval.

82.    Sheriff Spike, UnderSheriff Gleason and Lieutenant Rugar decided to continue the Article 75 Hearing seeking Plaintiff's termination after her acquittal on the criminal charges knowing there was no proof Plaintiff received pay for time she did not work, which was an allegation in all of the Article 75 charges.

83.    Sheriff Spike's Order/Reports rejected the Hearing Officer's decision in the Article 75 Hearing to pay Plaintiff her back pay for the period of suspension except for 30 days.   Sheriff Spike further doubled the recommended thirty day suspension to sixty (60) days and refused to apply the sixty day suspension to the time Plaintiff was previously suspended and commenced the sixty day as of the date of his Order/Report.

84.    The Sheriff pursued the Article 75 proceeding to seek Plaintiff's termination of employment as a C.O. as part of the ongoing conspiracy to remove Plaintiff as a C.O. in  the YCSD.

85.    Both Sheriff Spike, UnderSheriff Gleason and Lieutenant Rugar have continued to selectively prosecute Plaintiff in retaliation for breaking the "code of silence".

**Fourth Cause of Action**
**Conduct which Intimidated Plaintiff's Witnesses**
**42 U.S.C.A. § 1985**

86.    Plaintiff repeat and reallege each and every allegation contained in paragraphs 77 through 85 as if fully set forth herein

87.    The Sheriff, UnderSheriff, Lieutenant Rugar and other members of the circle conspired to deter by intimidation prospective witnesses who could have provided testimony or evidence on behalf of Plaintiff at her County Court trial and the Article 75 Hearing.

88.    Lieutenant Rugar as part of the conspiracy posted on the bulletin board in the YCJ a written notice to all employees of the YCJ that if they were subpoenaed by the defense for Plaintiff that they had to comply with the following directives:

a)    If a subpoena required a C.O. to appear during their work shift at the YCJ they would not be paid for the time they appeared in court or at the hearing as a witness on behalf of Plaintiff.  In contrast, when C.O.'s were subpoenaed as a witness for the prosecution C.O.'s were paid if they were called to testify during work hours and if they

were called into testify when they were not scheduled to work they received overtime pay for the time that they spent as a witness at the Trial, hearing and/or at the grand jury presentation.

b)      If a C.O. testified for Plaintiff that C.O. could not appear in court or at the hearing in uniform and if they were required to appear while they were working in uniform at the YCJ then they had to change into civilian clothes before they appeared for their testimony.   In contrast, all C.O.'s appearing for the prosecution or the Sheriff at the hearing, were directed to appear in uniform.

c)      The Sheriff also had a General Order (policy) that prevented any employee of the YCSD from testifying in a criminal action or procedure against the YCSD without receiving a subpoena and upon receipt of a subpoena required the employee to inform his OIC within 24 hours of the time that they received the subpoena from the defense and further requires the OIC to notify the Sheriff via chain of command. Upon information and belief C.O. called for the prosecution has no such notice requirements.

89.      These policies had both the direct and indirect effect of intimidating employees of the YCJ from testifying for Plaintiff at the time of her trial and Article 75 Hearing.

90.      Other civilians who had business dealings with the YCSD and/or had family members who worked for the YCSD also felt intimidated by these policies fearing retaliation by the circle.

91.      Prior to the commencement of the trial and/or Article 75 Hearing, both Plaintiff, and Plaintiff's attorney contacted several individuals who declined to testify at the trial or the Article 75 Hearing stating their fear of reprisal based on their knowledge of the policies of YCSD and/or their knowledge of reprisal by the circle.

92.      The above policies and publications had the effect of depriving Plaintiff of due process and presenting fully and fairly testimony and evidence during the Grand Jury presentation, her County Court trial and her Article 75 Hearing.

93.      The only witnesses who were willing to testify for Plaintiff were retired C.O.s from the YCJ and/or individuals who had no involvement with the County of Yates or the YCSD.

94.     To further the conspiracy to deny Plaintiff of a fair trial, court deputies, employees of the YCSD during Plaintiff's jury trial, upon directive of the circle, told Plaintiff's friends and family members who attended her trial that they had to sit in the front rows of the court room behind the defense table and could not turn their heads to look at other people in the court room and if they did they would be removed from the court room.

95.     The court room deputies, in furtherance of the conspiracy, also told Plaintiff's friends and family that they could not sit or stand in the general sitting area outside the court room during a recess and had to use the small attorney conference rooms which were completely enclosed and inadequate in size and this directive was not enforced as to other individuals.

96.     The court deputies in furtherance of the conspiracy told Plaintiff's family and friends that they could not use the same elevator from the ground floor (entry level) to the second floor (court room level) or from the second floor to the ground floor as other users of the court building.

97.     None of the above policies were enforced with other individuals including prosecution witnesses who attended the trial.   The Article 75 Hearing was held in a secure portion of the YCSD which prevented family and friends of Plaintiff from attending her hearing.

98.     These policies both verbal and written, directly and indirectly were intended to deny Plaintiff of equal protection of the law and influence the presentment of Plaintiff's defense at the grand jury, jury trial and Article 75 Hearing.

### Fifth Cause of Action
### Violation of Equal Protection of the
### Fourteenth Amendment
### Unconstitutional Gender Discrimination of Plaintiff

99.     Plaintiff repeat and reallege each and every allegation contained in paragraphs 86 through 98 as if fully set forth herein

100.     Plaintiff was purposefully discriminated against due to her gender as were other female C.O.s at the YCJ.

101.     At all relevant times, female employees at the YCJ have been and continue to be discriminated against due to their gender, a policy which was known or

should have been known by the Sheriff, UnderSheriff, and Lieutenant Rugar, as agents of the County of Yates.

102.    At all relevant times, female employees were systematically scheduled for work assignments and hours that are "undesirable". ie  3 to 11, 11 to 7 shifts, weekends, holidays, Super Bowl Sundays, opening day of deer hunting season, etc.

103.    It was common practice of the circle to deny female employees that have scored higher than male counterparts on an exam for promotion to Sergeant's and be past over for promotion to Sergeant in place of males especially members of the "circle".

104.    The shift changes and scheduling was controlled by members of the Circle.

105.    The Sheriff had a policy that prevented female deputies from driving an inmate transport vehicle.  Only male officers were permitted to drive the inmate transport vehicles.

106.    Plaintiff and other female C.O.s when working a scheduled shift at the YCJ were discriminated against in the performance of the required duties during that shift such as being required to do the round, picking up the meal trays and cleaning of the cell blocks.  These assignments were given to the female employees to perform rather than on an equal basis to the on duty C.O.s, male and female equally.

107.    This practice of discrimination was based on the gender of the C.O. and is one which has existed for an extended period of time and is known or should have known by the chain of command including the Sheriff, the UnderSheriff and Lieutenant Rugar.

**WHEREFORE,** the Plaintiffs demand judgment against the Defendants as follows:

1.    For the first cause of action against The County of Yates as stated Municipal Liability Violated Under 42 U.S.C. §1983, Plaintiff, Patricia Fox, demand judgment for the following:

both past and future severe pain and emotional distress, trauma, nervousness, anxiety, embarrassment, and humiliation, medical expenses, for Two Million Five Hundred Thousand ($2,500,000.00) Dollars each. Plaintiff further seek an award for attorney's fees and cost incurred in bringing this action, an award for punitive damages, and such other and further relief as the Court deems just and proper.

2.      For the second cause of action against The County of Yates as stated as Malicious Prosecution Under 42 U.S.C. §1983, Plaintiff, Patricia Fox, demand judgment for the following:

both past and future severe pain and emotional distress, trauma, nervousness, anxiety, embarrassment, and humiliation, medical expenses, for Two Million Five Hundred Thousand ($2,500,000.00) Dollars each. Plaintiff further seek an award for attorney's fees and cost incurred in bringing this action, an award for punitive damages, and such other and further relief as the Court deems just and proper.

3.      For the third cause of action against The County of Yates as stated as Malicious Prosecution Under 42 U.S.C. §1983, Plaintiff, Patricia Fox, demand judgment for the following:

both past and future severe pain and emotional distress, trauma, nervousness, anxiety, embarrassment, and humiliation, medical expenses, for Two Million Five Hundred Thousand ($2,500,000.00) Dollars each, and such other and further relief as the Court deems just and proper.

4.      For the fourth cause of action against The County of Yates as stated as Personal Liability of Sheriff Spike, Undersheriff Gleason and Lieutenant Rugar Under 42 U.S.C. §1983, Plaintiff, Patricia Fox, demand judgment for the following:

both past and future severe pain and emotional distress, trauma, nervousness, anxiety, embarrassment, and humiliation, medical expenses, for One Million Five Hundred Thousand ($1,500,000.00) Dollars. Plaintiffs further seek an award for attorney's fees and cost incurred in bringing this action, an award for punitive damages each, and such other and further relief as the Court deems just and proper.

5.      For the fifth cause of action against The County of Yates as stated as Conduct which Intimidated Plaintiff's Witnesses Under 42 U.S.C. §1985, Plaintiff, Patricia Fox, demand judgment for the following:

both past and future severe pain and emotional distress, trauma, nervousness, anxiety, embarrassment, and humiliation, medical expenses, for Two Million Five Hundred Thousand ($2,500,000.00) Dollars., and such other and further relief as the Court deems just and proper.

6.      For the sixth cause of action against The County of Yates as stated Violation of Equal Protection of the Fourteenth Amendment Unconstitutional Gender Discrimination of Plaintiff, Plaintiff, Patricia Fox, demand judgment for the following:

both past and future severe pain and emotional distress, trauma, nervousness, anxiety, embarrassment, and humiliation, medical expenses, for Two Million Five Hundred Thousand ($2,500,000.00) Dollars.  Plaintiffs further seek an award for attorney's fees and cost incurred in bringing this action, an award for punitive damages and such other and further relief as the Court deems just and proper.

DATED:  January 8, 2010

Respectfully submitted,


*s/Anthony J. LaDuca*
_____
ANTHONY J. LADUCA, ESQ. of Counsel
LaDuca, Law Firm, LLP
Attorneys for the Plaintiff
Office & PO Address
125 State Street, Suite 400
Rochester, New York 14614
Telephone:  (585) 454-1000

**VERIFICATION**

STATE OF NEW YORK)
COUNTY OF MONROE)  SS.:

I, Patricia A. Fox, being duly sworn, deposes and says:

That your deponent is the Plaintiff in the above entitled proceeding and the foregoing Complaint is true to my own knowledge except as to the matters therein stated to be alleged,   upon information and belief, and that as to those matters are believed to be true.

*s/Patricia Fox*

_____

Patricia A. Fox

Sworn to before me this 8th
Day of January, 2010


*s/Anthony J. LaDua*

_____

Notary Public

Anthony J. LaDuca
Notary Public, State of New York
Monroe County
Commission Expires May, 2011