## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK

_____

| | | |
|---|---|---|
| Patricia A. Fox, | : | |
| Plaintiff, | : | |
| | : | |
| | : | **AMENDED** |
| v. | : | **COMPLAINT** |
| | : | |
| THE COUNTY OF YATES, SHERIFF RONALD | : | |
| G. SPIKE, both individually and in his official | : | |
| capacity as Sheriff of Yates County, and | : | |
| UnderSheriff JOHN C. GLEASON, both individually | | |
| and in his official capacity as UnderSheriff | | |
| Yates County  LIEUTENANT CLAY RUGAR, | | **JURY TRIAL** |
| both individually and in his official capacity as Jail | | **DEMANDED** |
| Administrator of the Yates County Jail, | | |
| | : | |
| Defendants. | : | |

_____:

## INTRODUCTION

This is a civil rights action in which the Plaintiff, Patricia A. Fox, seeks relief for the Defendants'
violation of her rights secured by 42 U.S.C. §1983, 1985 et. al, and of her rights secured by the
Fourteenth Amendment of the United States Constitution, and the rights secured under the laws
and Constitution of the State of New York.  Defendants', Yates County, Yates County Sheriff's
Department; Sheriff Ronald G. Spike, both individually and in his capacity as Sheriff of Yates
County; Undersheriff Gleason and Lieutenant Clay Rugar, both individually and in his official
capacity as Jail Administrator actions are alleged to have taken place under color of state law.
The Plaintiff(s) seeks damages, both compensatory and punitive, affirmative and equitable relief,
and award of costs and attorney's fees, and such other and further relief, as this Court deems
equitable and just.

## JURISDICTION

1.      This Court has jurisdiction over this action under the provisions of 28 U.S.C. §§
1331, 1341 & 1343 because it is filed to obtain compensatory damages, punitive damages, and
injunctive relief for the deprivation, under color of state law, of the rights of citizens of the
United States secured by the Constitution and federal law pursuant to 42 U.S.C. §1983 and 1985.

This Court also has jurisdiction over this action under the provisions of 28 U.S.C. § 2201, as it is filed to obtain declaratory relief relative to the Constitutionality of the policies of a local government.

2.      Venue is proper under 28 U.S.C. § 1391(e)(2) because the events giving rise to Plaintiff's claims and those of proposed class members occurred in this judicial district.

## PARTIES

3.      Plaintiff, Patricia A. Fox, resides in Yates County, New York.

4.      Defendant, County of Yates, is a county government organized and existing under the laws of the State of New York with a principle place of business at 227 Main Street, Penn Yan, New York.

5.      At all times relevant hereto, the County of Yates, acting through its Sheriff's Department, was responsible for the policies, practices, supervision, implementation and conduct of all matters pertaining to the Yates County Jail  and was responsible for the appointment, training, supervision and conduct of all Sheriff's Department personnel, including those working in the Yates County Jail . In addition, at all relevant times, the County was responsible for enforcing the rules of the Yates County Jail and for ensuring that Sheriff's Department personnel employed in the Jail obey the Constitution and laws of the United States and of the State of New York.

6.      The Yates County Sheriff's Department (YCSD) is a County Sheriff's Department organized and existing under the laws of the State of New York. Although not a legal entity for the purposes of litigation, the Department is listed as a party for the purposes of identification. At all times relevant hereto, the YCSD was responsible for operating, organizing, overseeing and administering the Yates County Jail (YCJ). At all times relevant hereto, Defendant, YCSD, as an administrative arm of the County of Yates, was responsible for the polices, practices, supervision, implementation and conduct of all matters pertaining to the Yates County Jail (YCJ), and was responsible for the appointment, training, supervision and conduct of all Sheriff's Department personnel, including those working in the YCJ.  In addition, at all times relevant hereto, Defendant, YCSD, as an administrative arm of the County of Yates, was responsible for enforcing the rules of the YCJ, and for ensuring that YCSD personnel employed in the YCJ obeyed the Constitution and laws of the United States and of the State of New York.

7.      Defendant, Ronald G. Spike, ("Sheriff Spike") is the duly elected Sheriff of Yates

County, and, as such, is a policy maker with respect to the treatment of pre-trial and other detainees over which the Jail exercises custodial or other control. Sheriff Spike's principal place of business is 227 Main Street, Penn Yan, New York 14527-1720. Sheriff Spike is made a Defendant in this action in both his individual and official capacities.

8.     Defendant, John C. Gleason, (UnderSheriff) is the duly appointed UnderSheriff to who all employees of the Jail under the administration of Lieutenant Rugar and all the employees of the criminal sector under Lieutenant Sotir's report.   UnderSheriff Gleason principal place of business is 227 Main Street, Penn Yan, New York14527-1720.   UnderSheriff Gleason is made a defendant under this action both in his individual and official capacities.

9.     Defendant, Clay Rugar, ("Lieutenant Rugar") is the duly appointed Jail Administrator of Yates County and, as such, is a policy maker with respect to the treatment of pre-trial and other detainees over which the Jail exercises custodial or other control. Jail Administrator Rugar's principal place of business is 227 Main Street, Penn Yan, New York 14527-1720. Administrator Rugar is made a Defendant in this action in both his individual and official capacities.

## BACKGROUND FACTS

10.     Plaintiff served as a probationary (corrections officer hereinafter "C.O.") for the YCSD from 2002 to July 4, 2004.   Thereafter she was permanent appointee under the Civil Service Law (CSL) of the State of New York.    Plaintiff's employment position was and is protected under the federal constitution.

11.     Prior to October of 2007, Plaintiff had never been subject to any prior disciplinary proceeding and had an excellent work history as a C.O. in the YCJ.

12.     The facts set forth below outline wide spread corruption, intimidation, violation of constitutional rights of employees, malice in the arrest and prosecution of Plaintiff and unlawful and unconstitutional policies, procedures and regulations of the YCJ under the direction of Sheriff Spike, UnderSheriff Gleason, Lieutenant Rugar and other employees under their command.

**The "Circle" and/or "Good old boys"**

13.     The term the "Circle" and or "Good old boys" (hereafter referred to as the "Circle") are well-known terms used and known by C.O.s within the YCJ.  Both terms  are

3

synonymous to a select group of male C.O.s, Sergeants, Lieutenant Rugar, UnderSheriff Gleason and Sheriff Spike.

14.    C.O.'s within the YCJ have come to understand that members of the Circle receive preferential treatment and as a group they have imposed their collective efforts to violate statutory and constitutional rights of female C.O.s.

**Criminal conduct at the YCJ reported by Plaintiff:**

**A.  Stolen Medication by C.O. Kim Whitford**

15.    At all relevant time from 2004-2007, Plaintiff was legally prescribed Vicodin for an injury she sustained.

16.    While on duty at the YCJ, Plaintiff secured her medication with her personal belongings in the break room for C.O.s.

17.    In 2005, Plaintiff noticed a significant quantity of her medication was missing while Plaintiff was working.

18.    Plaintiff reported the missing medication to her supervisory senior officer in charge (OIC).

19.     After an internal investigation, C.O. Kim Whitford was criminally charged with the theft of medication.  Upon information and belief, the criminal charges where favorably disposed of after with the acceptance of her resignation from the YCJ based upon her relationship with the Circle.

20.    At all relevant times Sergeant Chad Gridley has been and continues to be a member of the Circle.  At the time of the above events Sergeant Gridley, was having an intimate relationship with C.O. Whitford (they later married).

21.    Subsequent to the above-mentioned matter, Plaintiff was informed by fellow C.O.s that Sergeant Gridley and other members of the "circle" were conspiring to terminate her position as a C.O. at the YCJ.

**B.  Acts of Sex and Viewing Porn in the YCJ Reported by Plaintiff**

22.    While working the night shift (11pm through 7am) at the YCJ, Plaintiff noticed that a female C.O. and a male Sergeant who was known to be a member of the Circle, would continuously seclude themselves in various rooms (particularly the commissary room) at the YCJ while on duty.

23.    Based on the sounds coming from the room Plaintiff knew the Sergeant and female C.O. were engaging in sexual intercourse.

24.    Plaintiff further noticed the two and other C.O.s accessing porn sites on the YCJ's computer during their work shifts.

25.    Plaintiff reported the above conduct to her supervisory Sergeant who, upon information and belief, verbally warned the Sergeant to consider the consequences of his conduct.    Subsequent to the verbal warning the offending Sergeant and female C.O. began to harass Plaintiff for reporting them but continued their illicit conduct while working at the YCJ.

26.    Plaintiff reported the harassment and above-mentioned illicit behavior to Lieutenant Rugar on or about July 2006.  Lieutenant Rugar informed Plaintiff that there was no evidence of the conduct.

27.    After her meeting with Lieutenant Rugar, Plaintiff began documenting her observations of the continued illicit behavior including use of tape recorder to record some of these incidences which totaled over 50 pages of hand written notes of events documenting the continued conduct that Lieutenant Rugar refused to investigate.

28.    Plaintiff provided the 50 pages of notes of the illicit conduct to Lieutenant Rugar and/or UnderSheriff Gleason on or about November 29, 2006.

29.    Lieutenant Rugar and UnderSheriff Gleason orally agreed to not disclose the information provided by Plaintiff or Plaintiff's identity to the sergeant and C.O. involved. Plaintiff relied on this oral agreement.  Plaintiff was also statutorily protected from retaliation for reporting misconduct under New York Civil Service Law (CSL).

30.    Undersheriff Gleason and/or Lieutenant Rugar breached their oral promises and violated their statutory obligation to Plaintiff and provided the male Sergeant and the female C.O. with copies of Plaintiff's 50 pages of hand written notes and identified Plaintiff as a source of the information.    The YCSD knew or should have known that retaliation against Plaintiff would occur directly or indirectly.

31.    Subsequent to Plaintiff being exposed she was subjected to constant harassment by the male Sergeant and the female C.O.'s and other C.O.'s.

32.    Plaintiff was also assigned to duty in the "dorm" which is a secluded part of the Jail by the Circle.

33.    In addition to being harassed, Plaintiff was subjected to malicious and false reports (Plaintiff intoxicated while working) by the female C.O. involved in the illicit conduct.

34.    Allegations against Plaintiff were investigated by a Sergeant who was a certified breath test operator and trained in the detection of the effects of alcohol upon individuals.

35.    The Sergeant's investigation found the allegations regarding Plaintiff were baseless and unfounded.

36.    Plaintiff's superiors including but not limited to UnderSheriff Gleason, Lieutenant Rugar, Sergeant Chad Gridley, and other members of the Circle all knew or should have known that the allegations against Plaintiff were unfounded; and knew or should have known the allegations were retaliation for Plaintiff's reporting the above mentioned misconduct.

37.    The Sergeant who investigated the Plaintiff for the malicious reports informed Plaintiff to "watch her back" after his investigations of several unfounded complaints since he was aware of the methods used by the circle to retaliate against whistleblowers for breaking the unwritten "code of silence."

38.    UnderSheriff Gleason, Lieutenant Rugar, Sergeant Chad Gridley, and other members of the Circle refused to stop the retaliatory conduct against Plaintiff.

39.    UnderSheriff Gleason, Lieutenant Rugar, Sergeant Chad Gridley, and other members of the Circle knew or should have known that their release of Plaintiff evidence and identity as a whistleblower and their inaction to suppress false accusations directed at Plaintiff at the YCJ violated their statutory duty and oral contract which Plaintiff believed to be a significant property right and a status protected by statute.

### Municipal Policy that Violated
### 29 U.S.C. 201 et seq.

40.    At relevant times the YCJ had a policy that requires C.O.'s to begin work ten to fifteen minutes before their reported shift (paid time) commences.    During this unpaid work, reporting C.O.'s must facilitate the "count" (counting of inmates in cell blocks and the necessary book entries).

41.    At all relevant times the Sheriff had and continues to have a General Order contained in GO-8-96.

6

42.     Paragraph number two (2) of the Order required all "members below rank of Sergeant" to obtain a Sergeant's written approval for overtime already worked in order to be paid, which violates the Fair Labor Standards Act.

43.     It was well known in the YCJ that this process of obtaining written approval for overtime already worked was and continues to be selectively and discriminatorily granted by members of the Circle primarily to members of the Circle.

44.     At all relevant times the Sheriff had and continues to have a policy, which required C.O.s to document their daily and weekly total time worked (regular and overtime) on their time cards even though the time cards showed the time punched in (commencing their work) and out (ending their work).

45.     The YCSD requirement of seeking a Sergeant's approval for overtime already worked allows for the illegal practice to occur wherein in Sergeants are vested with authority to deny payment for work already completed thereby enhancing the powers of the Circle over C.O.s and also requires C.O. to seek approval for overtime already worked.

46.     The Fair Labor Standard Act (FLSA) sets forth the right of all workers to be compensated for overtime work completed in the course of employment for their employer without the need to get approval as a prerequisite to be paid.

### As and for a First Cause of Action
### Malicious Prosecution Under 42 U.S.C. §1983
### Based on the Criminal Prosecution

47.     Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as is more fully set forth herein.

48.     Subsequent to the above efforts to get Plaintiff to resign her position as a C.O. members of the Circle conspired to find a way to terminate Plaintiff's as a C.O.

49.     It was well known by members of the Circle that Plaintiff frequently was asked and accepted either scheduled or unscheduled overtime work, which was above and beyond the overtime worked by a C.O. reporting early for the "count".

50.     Members of the Circle conspired to use the above-mentioned YCJ illegal policy (obtaining written approval for overtime worked) to charge Plaintiff with criminal charges based on her failure to follow this jail rule.

51.     On or about July through September, 2007 members of the "Circle" conspired to investigate all aspects of Plaintiff's work at the Jail in an effort to seek her removal as a vested C.O. under the Civil Service Law (CSL) with the YCJ.   One of those efforts was to copy her time card on a daily basis to see if Plaintiff violated the jail rule regarding obtaining written approval for overtime.

52.     Plaintiff worked sufficient overtime August 16 through 17, September 3 through 4, 17 and 27, of 2007 to justify the approved and unapproved overtime.

53.     Plaintiff requested and received overtime pays for the above-mentioned worked overtime some with Sergeant approval some without Sergeant's approval i.e. one-half hour on each of the four dates.

54.      Plaintiff failed to follow the YCJ policy of seeking Sergeant approval for four (4) separate half-hours of overtime already completed for the above-mentioned dates.

55.     The members of the Circle specifically, Sheriff Spike, Undersheriff Gleason and Lieutenant Rugar in furtherance of the conspiracy to bring criminal charges directed Lieutenant Sotir and Investigator Backer to question Plaintiff regarding her failure to seek Sergeant approval for the above unapproved overtime to further a criminal prosecution.

56.     Prior to questioning Plaintiff, Sheriff Spike, Undersheriff Gleason, Lieutenant Rugar, Criminal Investigators Sotir and Backer, and other members of the Circle all knew or should have known that Plaintiff in fact worked the overtime on all four separate occasions on August 16 through 17, September 3 through 4, 17 and 27, of 2007.

57.     The YCJ timecard machine that imprints a "punched in" and "punched out" time documented and validated Plaintiffs added request for the above-mentioned overtime.

58.     The total amount of money paid to Plaintiff for the four one-half hours of overtime amounted to less than sixty dollars ($60.00).

59.     At all times relevant, there never was any evidence that Plaintiff did not work the overtime for which she was paid and there was no probable cause to believe Plaintiff stole money from Yates County or falsified her time cards.

60.     During the questioning of Plaintiff by Criminal Investigators Sotir and Backer, Plaintiff admitted not following the YCJ unlawful policy but continuously maintained that she worked the overtime.   This conversation was electronically recorded by Lieutenant Sotir without Plaintiff's knowledge.

61.    Both Lieutenant Sotir and Investigator Backer knew or should have known based on their experience and knowledge as well as Plaintiff's statement that no crime was committed.

62.    After discussing this matter with Plaintiff, the investigators made inquiry with Lieutenant Rugar as to what was to be done with Plaintiff.   Upon information and belief, Jail commanding officers, Sheriff Spike and/or UnderSheriff Gleason, and/or Lieutenant Rugar directed the investigators to commence a criminal prosecution against Plaintiff even though there was no probable cause to believe a crime was committed.

63.    Based on directive of his superiors, Investigator Backer prepared a felony complaint charging Plaintiff with one felony of Falsifying a Business Record, in the first degree in that "between August and September, 2007 while employed in the Yates County Jail" Plaintiff did alter her time cards to show additional overtime hours resulting in her receiving $54.30 which she was not entitled to and, in addition thereto, filed one count of Petit Larceny, a misdemeanor, alleging that Plaintiff stole $54.30 from the County of Yates, the amount of overtime without any reasonable basis to believe either crime was committed by Plaintiff.

64.    While Plaintiff was being fingerprinted at the YCJ for these criminal charges, Lieutenant Rugar handed Plaintiff a written document asking Plaintiff if she wanted to sign the documents indicating her resignation as a C.O. from the YCSD indicating, in sum and substance, she may receive favorable disposition of her criminal charge if she resigned.

65.    Plaintiff refused to sign the resignation document and was then told she was suspended from duty as a C.O. at the YCJ.

66.    Plaintiff entered a not guilty plea to the above-mentioned charges on October 15, 2007 in the Penn Yan Village Court.

67.    Plaintiff subsequently requested the right to appear and testify before the Yates County Grand Jury regarding these charges.

68.    In furtherance of the conspiracy to maliciously prosecute Plaintiff, in order to remove her from the YCSD the following conduct occurred which removed the presumption of probable cause in the grand jury process of returning an indictment:

a)    Lieutenant Sotir contemporaneously electronically recorded the interview conducted by Investigator Backer and himself of the Plaintiff on or about October 2, 2007.  This interview lasted for approximately one-half hour.   During the interview the plaintiff repeatedly told both investigators that she had worked the overtime she had requested on her time card.

The Plaintiff was unaware of this electronic recording.  Investigator Sotir never told the District Attorney or defense counsel of the recording prior to the Grand Jury presentation.   This exculpatory evidence was withheld from the District Attorney and the Grand Jury.   A grand juror specifically asked Investigator Backer if an electronic recording of the interview was made and he deceptively responded that his department always takes a written statement.    His response was not only misleading but false and deprived the Grand Jury of that evidence which the YCSD suppressed from their consideration.

b)      Lieutenant Sotir and Investigator Backer's testimony before the grand jury was false on many material issues.   They also either intentionally, recklessly or wantonly misstated material facts.  Lieutenant Sotir provided and testified in the grand jury that he took a written statement from Plaintiff.    That written statement contained false and inculpatory statements allegedly made by Plaintiff.   Lieutenant Sotir also gave a false statement as to why Plaintiff would not sign the written statement and never disclosed the electronic recording.

c)      Lieutenant Rugar specifically requested that the District Attorney prosecutes the Plaintiff for felony charges, which deviated drastically from proper police procedures and separation of powers within the judicial system.

d)      The YCSD criminal division failed to engage in reasonable steps to determine if Plaintiff had committed a crime.  The investigators never investigated the terms of Plaintiff's employment contract as it relates to overtime, never interviewed witnesses, or examined the time cards.  They falsely stated to the grand jury the manner in which Plaintiff was entitled to overtime, the amount of time necessary to work to receive overtime of one-half hour and other material facts.  They also failed to interview Plaintiff's co-workers who knew Plaintiff worked the overtime.  Also, they never asked the sergeant who approved the overtime on the February felony count if he signed for the overtime.

e)      The YCSD criminal division failed to investigate the law regarding an employee's right to be paid for overtime without the need for written approval.   The investigators falsely testified in the Grand Jury that the only way an employee was entitled to be paid overtime was when they were being "summoned" to work overtime.  Plaintiff did not have to be "summoned" into work in order to be entitled to be paid for overtime.  Plaintiff's receipt of overtime pay without being "summoned" into work was not a crime.  A reasonable investigation

into the labor law would have established that there was no probable cause to charge plaintiff with criminal charges.

69.     The County of Yates, by and through members of the Circle including Sheriff Spike and/or Under Sheriff Gleason, Lieutenant Rugar, Lieutenant, Sotir, Sergeant Backer participation in the investigation, arrest and prosecution of Plaintiff under the Penal Laws of the State of New York required Plaintiff to expend great sums of money in her defense especially for a lengthy criminal trial which resulted in her complete acquittal of all six counts of the indictment.

70.     The members of the Circle further demonstrated their malice by suspending Plaintiff without pay from January 22, 2008 through the completion of the Article 75 Hearing on July 2, 2009 in an effort to deny her the financial ability to defend herself against the criminal and administrative charges filed against her which was in violation of her statutory rights under the CSL and her substantial property right to her employment as a public employee as well as her wages.

71.     Malice was also demonstrated by the Circle's efforts to terminate Plaintiff after her acquittal on the criminal charges by continuing administrative charges which they knew or should have known were without basis in an Article 75 proceeding by continuing to allege that she received compensation (pay) for time she had not worked when they knew there was no evidence that Plaintiff did not work and Plaintiff had testified in the criminal proceeding providing great detail and evidence that she did not work on the days she requested and received overtime pay.

72.     The Sheriff continued to demonstrate his malice toward Plaintiff when he rejected the recommendations of the Hearing Officer appointed for the Article 75 Hearing and issued an Order/Report which doubled the recommended sanction, from thirty (30) days without pay to sixty (60) days and also denied Plaintiff her back pay as recommended by the Hearing Officer without any reference to facts in the record at the Article 75 Hearing or supporting law.  The Sheriff also refused to give Plaintiff credit for the time Plaintiff had been suspended without pay toward the sixty (60) day suspension.

73.     Lastly, the Sheriff showed malice when he directed the County Personnel Office to change Plaintiff's pension benefit anniversary date to comport with his Order/Reports.

### As and for a Second Cause of Action
### Malicious Prosecution Under 42 USC §1981

74.    Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as is more fully set forth herein.

75.    The Defendant maliciously prosecuted Plaintiff in a criminal prosecution in violation of 42 USC 1981.

### As and for a Third Cause of Action
### Malicious Prosecution Under New York State Law Based Upon
### The Article 75 Prosecution

76.    Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as is more fully set forth herein.

77.    The Defendant's maliciously   prosecuted Plaintiff in the Article 75 Hearing knowing that there was no evidence that she received money (pay) for time that she did not work.

### As and for a Fourth Cause of Action
### Conspiracy Under §1983

78.    Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as is more fully set forth herein.

79.    The Defendants and others were involved in a conspiracy with each other and others for the purpose of maliciously prosecuting the Plaintiff, harassing the Plaintiff,  in an effort to coerce her into retirement, thus violating 42 USC §1983.

### As and for a Fifth Cause of Action
### Conspiracy Under 42 USC §1985

80.    Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as is more fully set forth herein.

81.    The Defendants and others were involved in a conspiracy with each other and others for the purpose of maliciously prosecuting the Plaintiff, harassing the Plaintiff,  in an effort to coerce her into retirement, thus violating 42 USC §1985.

**As and for a Sixth Cause of Action**
**Denial of Due Process Under the Fourteenth Amendment**
**by Unlawful/Suspension of Plaintiff Without Pay and her**
**Statutory Right to have the Absolute Defense as a**
**Whistleblower Considered and Determined**
**As Required by the Statute under 42 USC §1983**

82.    Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as is more fully set forth herein.

83.    The YCSD sent Plaintiff a notice dated January 3, 2008 informing Plaintiff of five (5) additional administrative charges in addition to one filed on October 18, 2007.

84.    Each new charge alleged that Plaintiff, in sum and substance, violated YCSD rules by requesting and receiving four one-half hours of overtime pay which Plaintiff did not work.

85.    The notice also informed Plaintiff a hearing under Article 75 under the CLS was scheduled for January 22, 2008

86.    The Plaintiff shortly after this notice suffered a severe medical problem requiring emergency heart surgery and based upon her post surgery medical condition Plaintiff sent a letter to the Sheriff requesting a postponement of the hearing until her health was better and asked the Sheriff to "please let me know as soon as possible of your decision…" regarding her request for an adjournment.

87.    The Sheriff never responded to Plaintiff's letter until over one year later by letter dated January 5, 2009.

88.    The Sheriff summarily and without due process refused to pay plaintiff during her suspension without pay beyond the thirty day permitted by CLS.

89.    The issue of the reason for the extensive delay in the commencement of the Article 75 Hearing was never determined on the merits at the Article 75 Hearing nor was Plaintiff absolute defense of a whistleblower under Article 75-b of the CLS by the Hearing Officer, Sheriff or county personnel officer on appeal.

90.    The Sheriff in his "Report" dated July 2, 2009 under Article 75 following the hearing and decision of the Hearing Officer sustained Plaintiff's suspension without pay despite the Hearing Officer's recommendation of only thirty days suspension without pay.  He also

failed to require the hearing officer to "consider and determine" the whistleblower defense as required by statute.

91.    CLS §75-b3(a) specifically requires the merits of the whistleblower defense when raised by an employee in an administrative hearing in response to his/her conduct as a whistleblower  "shall be considered and determined as part of… (the) hearing officer's decision."

92.    The Plaintiff raised the whistleblower defense at the Article 75 hearing and it was never "considered and determined" as required by statute.

93.    The Plaintiff raised the issue on appeal to the county personnel officer and again the Plaintiff's statutory right to consideration and determination of that defense was denied which denial was in clear violation of her right to due process as required by statute.

94.    The Sheriff and County of Yates denial of Plaintiff statutory due process deprived her of her right to employment and wages and consideration and determination of her absolute defense as a Whistleblower.

**As and for a Seventh Cause of Action**
**Personal Liability of Sheriff Spike,**
**UnderSheriff Gleason and Lieutenant Rugar**
**42 U.S.C. §1983**

95.    Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as is more fully set forth herein.

96.    The YCSD's municipal policies, which deny overtime compensation without Sergeant's written approval was selectively enforced against C.O.s particularly C.O.s who were not in the "Circle" and was used against Plaintiff with malice and as retaliation for reporting wrongdoing by members of the Circle and as part of a conspiracy to remove Plaintiff from her position as a C.O. with the YCSD for being a whistleblower, conduct which is protected under CSL.

97.    The individuals that directly participated in the selective enforcement of the above stated municipal policies were Sheriff Spike, UnderSheriff Gleason, Lieutenant Rugar and other members of the "Circle".

98.    Both Sheriff Spike and Lieutenant Rugar had been made aware of the provisions of the FLSA both in the criminal prosecution of Plaintiff and in the Article 75 proceeding and knew or should have known of the requirement of the FLSA and that the Plaintiff had not committed a crime.

99.    Both Sheriff Spike and Lieutenant Rugar failed to terminate the criminal prosecution and/or the Article 75 charges or remedy the policy permitting Sergeants to approve or deny payment for overtime already worked.

100.    Sheriff Spike, UnderSheriff Gleason and Lieutenant Rugar decided to continue the Article 75 Hearing seeking Plaintiff's termination after her acquittal on the criminal charges knowing there was no proof Plaintiff received pay for time she did not work, which was an allegation in all of the Article 75 charges.

101.    Sheriff Spike's Order/Reports rejected the Hearing Officer's decision in the Article 75 Hearing recommending that he pay Plaintiff her back pay for the period of suspension except for 30 days.   Sheriff Spike further doubled the recommended thirty day suspension to sixty (60) days and refused to apply the sixty day suspension to the time Plaintiff was previously suspended without pay and commenced the sixty day as of the date of his Order/Report.

102.    The Sheriff, Undersheriff and Lieutenant Rugar pursued the Article 75 hearing and criminal prosecution to seek Plaintiff's termination as a C.O. as part of the ongoing conspiracy to remove Plaintiff as a C.O. in  the YCSD.

103.    Both Sheriff Spike, UnderSheriff Gleason and Lieutenant Rugar have continued to prosecute Plaintiff in retaliation for breaking the "code of silence" or acted negligently.

### As and for a Eighth Cause of Action
### Personal Liability of Spike, Gleason and Rugar
### 42 USC §1986

104.    Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as is more fully set forth herein.

105.    The defendants Spike, Gleason, and Rugar negligently failed to end the harassment, criminal prosecution, and administrative proceeding against plaintiff which denied her due process under 42 USC §1986.

### As and for a Ninth Cause of Action
### Conduct which Intimidated Plaintiff's Witnesses
### 42 U.S.C.A. § 1983

106.    Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as is more fully set forth herein

107.    The Sheriff, UnderSheriff, Lieutenant Rugar and other members of the Circle conspired to deter by intimidation prospective witnesses who could have provided testimony or evidence on behalf of Plaintiff at her County Court trial and the Article 75 Hearing.

108.    Lieutenant Rugar as part of the conspiracy to prosecute Plaintiff, posted on the bulletin board in the YCJ a written notice to all employees of the YCJ that if they were subpoenaed by the defense on Plaintiff's behalf that they had to comply with the following directives:

a)    If a subpoena required a C.O. to appear during their work shift at the YCJ they would not be paid for the time they appeared in court or at a hearing as a witness on behalf of Plaintiff.  In contrast, when C.O.'s were subpoenaed as a witness for the prosecution, the C.O.'s were paid if they were called to testify during work hours and if they were called into testify when they were not scheduled to work they received overtime pay for the time that they spent as a witness at the Trial, hearing and/or at the grand jury presentation.

b)    If a C.O. testified for Plaintiff that C.O. could not appear in court or at the hearing in uniform and if they were required to appear while they were working in uniform at the YCJ then they had to change into civilian clothes before they appeared for their testimony.    In contrast, all C.O.'s appearing for the prosecution for the Sheriff at the trial, hearing or Grand Jury, were directed to appear in uniform.

c)    The Sheriff also had a General Order (policy) that prevented any employee of the YCSD from testifying in a criminal action or proceeding against the YCSD without receiving a subpoena and upon receipt of a subpoena, required the employee to inform his OIC within 24 hours of the time that they received the subpoena from the defense and further requires the OIC to notify the Sheriff via chain of command.   Upon information and belief, a C.O. called for the prosecution has no such notice requirements.

109.    These policies had both the direct and indirect effect of intimidating employees of the YCJ from testifying for Plaintiff at the time of her trial and Article 75 Hearing.

110.    Other civilians who had business dealings with the YCSD and/or had family members who worked for the YCSD also felt intimidated by these policies fearing retaliation.

111.    Prior to the commencement of the trial and/or Article 75 Hearing, both Plaintiff, and Plaintiff's attorney contacted several individuals who declined to testify at the trial or the

Article 75 Hearing stating their fear of reprisal based on their knowledge of the policies of YCSD and/or their knowledge of reprisal by the circle.

112.    The above policies and publications had the effect of depriving Plaintiff of due process and presenting fully and fairly testimony and evidence during the Grand Jury presentation, County Court trial and the Article 75 Hearing.

113.    The only witnesses who were willing to testify for Plaintiff were retired C.O.s from the YCJ and/or individuals who had no involvement with the County of Yates or the YCSD.

114.    To further the conspiracy to deny Plaintiff of a fair trial, court deputies, employees of the YCSD, during Plaintiff's jury trial, upon directive of the circle, told Plaintiff's friends and family members who attended her trial that they had to sit in the front rows of the court room behind the defense table and could not turn their heads to look at other people in the court room and if they did they would be removed from the court room.

115.    The court deputies, in furtherance of the conspiracy, also told Plaintiff's friends and family that they could not sit or stand in the general sitting area outside the court room during a recess and had to stay in a small attorney conference room which were completely enclosed and inadequate in size.   This directive was not enforced as to other individuals.

116.    The court deputies also told Plaintiff's family and friends that they could not use the same elevator from the ground floor (entry level) to the second floor (court room level) or from the second floor to the ground floor as other users of the court building.

117.    None of the above policies were enforced with other individuals including prosecution witnesses who attended the trial.

118.    The Article 75 Hearing was held in a secure portion of the YCSD that prevented family and friends of Plaintiff from attending her hearing in a public forum.

119.    These policies both verbal and written, directly and indirectly were intended to deny Plaintiff of equal protection of the law and limit the presentment of Plaintiff's defense at the grand jury, jury trial and Article 75 Hearing.

### As and for a Tenth Cause of Action
### Violation of Equal Protection of the
### Fourteenth Amendment Unconstitutional
### Gender Discrimination of Plaintiff

120.    Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as is more fully set forth herein

121.    Plaintiff was purposefully discriminated against due to her gender as were other female C.O.s at the YCJ.

122.    At all relevant times, female employees at the YCJ have been and continue to be discriminated against due to their gender, a policy which was known or should have been known by the Sheriff, UnderSheriff, and Lieutenant Rugar, as agents of the County of Yates.

123.    At all relevant times, female employees were systematically excluded from numerous positions with the YCSD and YCJ.

124.    It was common practice of the circle to deny female employees that have scored higher than male counterparts on an exam for promotion to Sergeant's and be past over for promotion to Sergeant in place of males especially members of the "Circle".

125.    The appointed, designated or assignment of a job, position and training for position was controlled by members of the Circle.

126.    The Sheriff had a policy that prevented female deputies from driving an inmate transport vehicle.  Only male officers were permitted to drive the inmate transport vehicles.

127.    The Circle also prevented qualified female C.O. from the following positions which have been exclusively reserved for male C.O.s; dive (scuba) team, fire investigator, firearm instructor, CPR/First Aid instructors, Sweep (weekend work crew) officers, suicide prevention instructors, cross trained (court deputies and jail deputies), road pistol deputies, as well as training with specialized vehicles and equipment i.e. four wheelers, snowmobiles, etc.

128.    Plaintiff and other female C.O.s when working a scheduled shift at the YCJ were discriminated against in the performance of the required duties during that shift such as being required to do the rounds, picking up the meal trays and cleaning of the cell blocks.  These assignments were given to the female employees to perform rather than on an equal basis to the on duty C.O.s, male and female equally.

129.    This practice of discrimination was based on the gender of the C.O. and is one which is known or should have known by the chain of command including the Sheriff, the UnderSheriff and Lieutenant Rugar.

130.    As a result of the above mentioned gender discrimination the Plaintiff was deprived training, advancement in rank, pay scale, overtime pay, fringe benefits, and other such adverse employment consequences.

**As and for a Eleventh Cause of Action**
**Conduct which Intimidated Plaintiff/Witnesses**
**42 U.S.C. §1985(2)**

131.    Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as is more fully set forth herein.

132.    The Plaintiff was deprived of equal protection and due process in the presentation of her defense in the criminal prosecution.

**As and for a Twelfth Cause of Action**
**NYS Cause of Action Plaintiff's Back Pay**

133.    Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as is more fully set forth herein.

134.    The Plaintiff as a full time C.O. was entitled to the benefits of the CSL.

135.    Under CLS, the Sheriff could suspend Plaintiff for a maximum of thirty (30) days without pay prior to an Article 75 hearing.

136.    The Sheriff sent Plaintiff a notice dated January 3, 2008 stating an Article 75 hearing was scheduled for January 22, 2008.

137.    Shortly after Plaintiff received the Notice of the Article 75 hearing dated January 3, 2008, she suffered a substantial medical problem that required immediate heart surgery.  As a result of her medical condition following the surgery, Plaintiff sent a letter to the Sheriff dated January 17, 2008 requesting a postponement of the hearing and specifically asked in the letter to let Plaintiff know of his decision regarding the requested adjournment as soon as possible.

138.    The Sheriff never responded to Plaintiff's letter until January, 2009.  He continued Plaintiff's suspension without pay from January 22, 2008 to July 2, 2009 and never rescheduled the Article 75 hearing until January, 2009.

139.    The Sheriff was responsible for the delay in the scheduling of an Article 75 hearing.

140.    The Sheriff and County of Yates owes Plaintiff back pay, fringe benefits and seniority time for the period of time from January 22, 2008 to July 2, 2009.

### As and for an Thirteenth Cause of Action
### NYS Breach of Contract

141.    Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as is more fully set forth herein.

142.    The YCSD breached its oral agreement with the Plaintiff not to disclose her identity as a Whistleblower and the Plaintiff was damaged.

**WHEREFORE**, by reason of defendants of the violation of plaintiff's rights secured by both Federal and State Laws, the plaintiff has suffered a loss of earnings, future earnings and benefits, great pain, mental anguish and physical injury.  Plaintiff is thus entitled to all forms of compensatory damages, punitive damages (against the individual defendants), equitable relief, and any other damages and/or remedies permissible under law.  Plaintiff requests a jury trial on the issues presented herein.

DATED:  May 6, 2010

Respectfully submitted,

*s/Anthony J. LaDuca*

_____
ANTHONY J. LADUCA, ESQ. of Counsel
LaDuca, Law Firm, LLP
Attorneys for the Plaintiff
Office & PO Address
125 State Street, Suite 400
Rochester, New York 14614
Telephone:  (585) 454-1000

**VERIFICATION**

STATE OF NEW YORK)
COUNTY OF MONROE)  SS.:


I, Patricia A. Fox, being duly sworn, deposes and says:

That your deponent is the Plaintiff in the above entitled proceeding and the foregoing Complaint is true to my own knowledge except as to the matters therein stated to be alleged, upon information and belief, and that as to those matters are believed to be true.


*s/ Patricia A. Fox*

_____

Patricia A. Fox


Sworn to before me this 5th
Day of May, 2010


*s/Anthony LaDuca*

_____

Notary Public

*Anthony J. LaDuca*
*Notary Public, State of New York*
*Monroe County*
*Commission Expires: May, 2011*

21