UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

PATRICIA A. FOX,

                Plaintiff,

      v.

THE COUNTY OF YATES, et al.,

                Defendants.

_____

<u>DECISION & ORDER</u>

10-CV-6020T

## <u>PRELIMINARY STATEMENT</u>

Plaintiff Patricia A. Fox ("Fox") initiated the pending civil rights action against defendants the County of Yates ("the County"), Sheriff Ronald G. Spike ("Spike"), Undersheriff John C. Gleason ("Gleason") and Lieutenant Clay Rugar ("Rugar") (collectively, "defendants"), asserting various constitutional and state law claims arising out of her employment as a corrections officer at the Yates County Jail ("the jail") and her prosecution for allegedly falsifying time cards during her employment. (Docket # 7). The district judge dismissed the majority of Fox's claims by Decision and Order dated November 12, 2010. (Docket # 16). As a result of that decision, two causes of action under 42 U.S.C. § 1983 remain: one for malicious prosecution and one for gender discrimination in violation of the Equal Protection Clause. (*Id.* at 24-25).

Currently pending before this Court is Fox's motion to compel defendants to produce the prosecutor's legal charge to the grand jury that returned the indictment against Fox. (Docket ## 35, 37). According to Fox, disclosure of the charge is necessary to enable her to meet

one of the elements of her malicious prosecution claim – the absence of probable cause for the criminal charges brought against her.  (Docket # 37 at 10).

Defendants oppose the motion on several grounds.  First, they contend that Fox is collaterally estopped from challenging the sufficiency of the grand jury proceedings because the state court previously determined the proceedings were sufficient.  (Docket # 36-10 at 2-3).  In addition, they maintain that Fox has not satisfied her burden of demonstrating a particularized need for the grand jury charge.  (*Id.* at 5-8).  Finally, they assert that Fox's request is more appropriately addressed to the state court.  (*Id.* at 4-5).

For the reasons discussed below, Fox's motion is denied.


## FACTUAL BACKGROUND

### A.  Fox's Allegations of Malicious Prosecution

In her Amended Complaint, Fox alleges that during the period of her employment at the jail she reported to her supervisors several instances of employee misconduct.  (Docket # 7at ¶¶ 18-28).  Fox claims that in retaliation for her reports of misconduct, she was subjected to repeated instances of harassment and discrimination by the individual defendants and other jail employees.  (*Id.* at ¶¶ 29-33).  According to Fox, part of their retaliation included the initiation of false criminal charges against her.  (*Id.* at ¶ 50).

The offenses for which she was indicted involved allegations that Fox falsified her time cards by including overtime that had not been approved under the jail's overtime policy.  (*Id.* at ¶¶ 51-59).  Specifically, the policy required certain employees, including Fox, to obtain a supervisor's written approval in order to be paid for overtime that the employee had worked.  (*Id.*

at ¶ 42).  According to Fox, she worked overtime on four separate shifts, August 16-17, September 3-4, September 17 and September 27, 2007.  (*Id.* at ¶ 52).  Fox requested and received overtime approval for those dates.  (*Id.* at ¶ 53).  Fox concedes, however, that she violated the policy by adding on her time card for each of those dates an additional half-hour of unapproved overtime to the approved overtime.  (*Id.* at ¶¶ 53-54).  Fox maintains that she actually worked the extra time, thus making her alterations non-criminal.  (*Id.* at ¶ 59).

According to Fox, defendants directed two criminal investigators, Lieutenant Sotir ("Sotir") and Investigator Backer ("Backer"), to question her about the time cards as part of their plan to initiate false criminal charges against her.  (*Id.* at ¶ 55).  Fox asserts that the defendants and the investigators knew or should have known that she had actually worked the additional two hours of overtime and was entitled be paid for that time, even if she had violated the overtime policy.  (*Id.* at ¶ 56).  Fox claims that she informed Sotir and Backer that she had actually worked those hours when they interviewed her.  (*Id.* at ¶¶ 60-61).  Fox also alleges that Sotir and Backer made an electronic recording of the interview.  (*Id.* at ¶ 60).

Fox's Amended Complaint further alleges that when Sotir and Backer completed their investigation, defendants allegedly directed them to initiate a criminal prosecution against Fox despite their knowledge that Fox had actually worked the overtime listed on her time cards. (*Id.* at ¶ 62).  Fox further alleges that Backer proceeded to prepare a felony complaint charging Fox with falsifying business records.  (*Id.* at ¶¶ 61, 63).

Fox's Amended Complaint does not include any allegations concerning the Yates County District Attorney, Susan Lindenmuth ("Lindenmuth"), who presented the case to the grand jury and handled the criminal prosecution.  Nor has Fox asserted any allegations in

connection with this motion that Lindenmuth conspired or participated with the defendants to maliciously prosecute her.

### B.  Underlying Criminal Proceedings

Fox was indicted by a grand jury on five counts of falsifying records in the first degree in violation of New York Penal Law § 175.10[1] and one count of petit larceny in violation of New York Penal Law § 155.25.[2]  (Docket # 36 at ¶ 17 and Exhibit ("Ex.") D at Ex. 1).  Fox, Sotir and Backer, among others, testified during the grand jury proceedings.  (Docket # 7 at ¶¶ 67-68).  Following the grand jury proceedings, Fox moved to dismiss the indictment pursuant to New York Criminal Procedure Law §§ 210.20(1)(c) and 210.35 on the grounds that the grand jury proceedings were defective and the evidence was insufficient to support the charges.

---

[1]  New York Penal Law § 175.10 provides:

> [a] person is guilty of falsifying business records in the first degree when he commits the crime of falsifying business records in the second degree, and when his intent to defraud includes an intent to commit another crime or to aid or conceal the commission thereof.

New York Penal Law § 175.05 provides:

> A person is guilty of falsifying business records in the second degree when, with intent to defraud, he:
>
> > 1.  Makes or causes a false entry in the business records of an enterprise; or
> >
> > 2.  Alters, erases, obliterates, deletes, removes or destroys a true entry in the business records of an enterprise; or
> >
> > 3.  Omits to make a true entry in the business records of an enterprise in violation of a duty to do so which he knows to be imposed upon him by law or by the nature of his position; or
> >
> > 4.  Prevents the making of a true entry or causes the omission thereof in the business records of an enterprise.

[2]  New York Penal Law § 155.25 provides:  "A person is guilty of petit larceny when he steals property."

(Docket # 36 at ¶ 18, Ex. E at 2).  Based upon its *in camera* review of the grand jury minutes, including its "careful[] review[] [of] the instructions given the Grand Jury by the Court and the District Attorney," the state court found that the proceedings were legally sufficient and denied the motion to dismiss the indictment.  (*Id.* at Ex. E at 4, 8).

Fox was subsequently acquitted of all charges at trial.  (Docket # 7 at ¶ 69).  Following her acquittal, the state court ordered the sealing of the records relating to Fox's criminal trial, including the grand jury minutes.  (Docket # 39 at ¶ 16).

### C. <u>Request to Unseal the Grand Jury Proceedings</u>

Fox thereafter commenced this action, alleging a variety of constitutional and state law claims, including malicious prosecution.  (Docket # 7 at ¶¶ 47-73).  During discovery, defendants moved the state court to unseal the grand jury minutes.  (Docket # 39 at ¶ 17).  In advance of oral argument, counsel for both parties agreed upon a proposed order to submit to the state court to unseal the records.  (*Id.* at ¶¶ 18-22).

At oral argument, the Yates County District Attorney appeared and opposed the motion to the extent it sought to unseal the prosecutor's charge to the grand jury.[3]  (Docket # 36 at ¶ 11 and Ex. B at 4-5).  Counsel for Fox responded that the grand jury charge would support her attempt to rebut the probable cause presumption created by the grand jury indictment.  (*Id.* at Ex. B at 3-4, 6).  The state court granted the motion to unseal the grand jury testimony, but denied the unsealing of the charge.[4]  (Docket # 36 at ¶ 11 and Ex. B at 6).

---

[3]  The District Attorney who appeared was not the same District Attorney who had handled Fox's prosecution.

[4]  Although the state court did not modify the proposed order to maintain sealing of the charge (Docket # 36 at ¶ 11 and Ex. B), for the purposes of this motion, both parties agree that the state court's intention was to keep the charge sealed.  (*Id.*; Docket # 37 at 6).

### D.  __Allegations of Misconduct during Grand Jury Proceedings__

After the state court granted the unsealing order, defendants provided Fox with a copy of the grand jury minutes with the exception of the grand jury charge.[5]  (Docket # 36 at ¶ 13).  According to Fox, the transcripts reveal multiple instances of misconduct.  (Docket # 37 at 6-10; # 39-6 at 7).  For example, Fox contends that the minutes demonstrate that Sotir and Backer withheld information from the grand jury, including the fact that an electronic recording of Fox's interview existed, and provided false or misleading testimony.[6]  (Docket # 7 at ¶¶ 68(a)-(b)).

Fox also claims that certain statements made by the prosecutor and witness testimony could have misled the grand jury about the correct legal standard to be applied.  (Docket # 37 at 6-10).  According to Fox, these statements could have misled the grand jury into believing that the mere act of adding unapproved overtime to a time card constitutes falsifying business records whether or not the employee actually worked the additional overtime.  (*Id.*).

Fox's assertions concern five separate statements made during the grand jury proceedings.  The first two statements involved exchanges between Lindenmuth and witnesses who were employed at the jail.  According to Fox, these exchanges could have misled the jurors regarding the elements of falsifying business records.  In the first, District Attorney Lindenmuth asked a witness, in relevant part, "if you falsify your time card, you're committing a crime?"  (*Id.* at 6-7).  The witness, a jail sergeant, responded, "[c]orrect."  In the second, defendant Rugar

---

[5]  At oral argument on this motion, counsel for defendants represents that she obtained a copy of the grand jury charge, but has kept it under seal.

[6]  In her complaint, Fox alleges that the investigators also withheld the existence of the electronic recording from the District Attorney.  (Docket # 7 at ¶ 68(a)).

testified, in relevant part, "we're saying she falsified information on that time card.  Going back

and adding that time, she falsified the hours that she worked, she falsified an official department

document, falsified business records."  Following a grand juror question about that testimony,

District Attorney Lindenmuth advised, "Unfortunately, he can't answer that 'cause he can't give

you information on the law.  Only I and Judge Falvey can, and also he might not know because

he only deals with the Jail."  (*Id.* at 6-8 and Exs. E and F).

      The next exchanges involved testimony by two different witnesses, Sergeant Jarad

Bailey and Sergeant Louis Aaron, about whether they had the discretion to approve overtime

payments for overtime hours already completed by an employee.[7]  (*Id.* at 9-10).  Fox contends

that these statements improperly suggested to the grand jurors that Fox was not entitled to

overtime payments for hours that she had actually worked, but for which she had not obtained

supervisor approval.[8]

---

[7]  The final challenged exchange occurred between Lindenmuth and Rugar and related to the question
whether Fox would have been entitled to overtime pay for reporting to work early.  Fox asserts that this exchange
was improper because the prosecutor (as opposed to the witness) testified that Fox was not requested to report to
work early and therefore was not entitled to be paid overtime in connection with her early arrival.  (*Id.*).  To the
contrary, as the excerpts from the challenged testimony reveal, the witness, not the prosecutor, provided the
testimony:

      Lindenmuth:  But now it also shows she came in a little before three p.m. but she
      wasn't called in.  She hasn't said she was called in, she just got there at that
      time?

      Rugar:  Right, looks like approximately twenty minutes early for her shift.

      Lindenmuth:  So the overtime entitlement on this was four hours.

      Rugar:  Four hours.

(*Id.* at 8 and Ex. G).

[8]  These exchanges were as follows:

    (1)        Juror:  Oh, I have one more quick question.  If an officer puts down
             there that they worked that extra half hour, after like, let's say, the four

Defendants counter that the grand jury evidence was more than sufficient to support the criminal charges.  (Docket # 36 at ¶ 5).  According to defendants, the grand jury evidence includes documentary evidence contradicting Fox's testimony.  (*Id.* at ¶¶ 24-31).  For example, Fox testified that on September 17, 2007, she arrived at work at approximately 2:40 p.m. and was asked to relieve another corrections officer who was guarding an inmate in the attorney conference room.  (*Id.* at ¶ 27 and Ex. C at 79-80).  According to defendants, however, the records presented to the grand jury reveal that the inmate left the dorm for the conference room at 2:55 p.m.  (*Id.* at ¶ 28 and Ex. D at Ex. 22).  Alternatively, defendants maintain that the grand jury charge is irrelevant to the pending malicious prosecution claim because no evidence

---

hours had been approved, and the officer looks at the card for the week and decides by himself or herself that she should have been paid that extra half hour and then takes it upon themselves to write that half hour in there, could they go back to you or someone else and say I did this?

Lindenmuth:  Go ahead.

Witness:  If I'm the one that signed for it, she would need to come or whoever would need to come to me and ask, you know, indicate what took place in that half hour increment, and then it would be my decision if she was going to get the pay for that.

(2)     Lindenmuth:  But in terms of these cards in determining overtime, that's your decision?

Witness:  Yes.

Lindenmuth:  Correct?

Witness:  Yes, we have a schedule that we look at and –

Lindenmuth:  And you determine when someone's entitled to overtime and you're not told by someone you should give them overtime, you shouldn't give them overtime.

Witness:  No.

(*Id.* at 9-10 and Ex. H; Docket # 36-6 at 209).

exists that the grand jury charge, even if improper, resulted from prosecutorial misconduct.[9]

(Docket # 36-10 at 7-8).


## **DISCUSSION**

Fox contends that she needs the grand jury charge to enable her to satisfy one of the elements of her malicious prosecution claim – the absence of probable cause for the criminal charges.  (Docket ## 37, 39).  Specifically, she claims that disclosure is necessary to allow her to rebut the presumption of probable cause that arises as a result of the grand jury's return of the indictment.  (*Id.*).

In response, defendants contend that the state court's order denying Fox's motion to dismiss the indictment collaterally estops Fox from challenging the sufficiency of the grand jury proceedings in this action.  (Docket # 36-10 at 2-3).  Defendants further dispute that Fox has established a compelling and particularized need for the grand jury charge.  (*Id.* at 5-8).  Finally, defendants maintain that the interests in comity between federal and state courts require Fox to return first to state court to request unsealing of the grand jury charge before seeking such relief from this Court.  (*Id.* at 4-5).  Each of these contentions is addressed below.

### **A.  Collateral Estoppel**

Federal courts are required to give a state court judgment "the same preclusive effect as would be given to the judgment under the law of the State in which the judgment was

---

[9]  The defendants have taken the position that there is no particularized need to unseal the grand jury charge because "[t]he instructions to the Grand Jury do not relate to any of the enumerated bas[e]s for rebutting the presumption of probable cause," in essence, asserting that the charge given to the grand jury is irrelevant to Fox's efforts to rebut the presumption of probable cause.  (Docket # 36-10 at 8).  The natural extension of defendants' argument is that they should be foreclosed from relying on the charge to argue in favor of the presumption of probable cause.

rendered." *Johnson v. Watkins*, 101 F.3d 792, 794 (2d Cir. 1996).  This requirement applies to

actions brought under 42 U.S.C. § 1983 in order to promote comity between state and federal

courts.  *Id.* at 794-95.  In this case, defendants contend that the state court's decision denying

Fox's motion to dismiss the indictment collaterally estops her from challenging the sufficiency of

the grand jury proceedings in this action.

"Under New York law, the doctrine of collateral estoppel, or issue preclusion,

'bars a party from relitigating in a subsequent proceeding an issue clearly raised in a prior

proceeding and decided against that party where the party to be precluded had a full and fair

opportunity to contest the prior determination.'" *Id.* (quoting *Weiss v. Manfredi*, 83 N.Y.2d 974,

976 (1994)).  Application of the collateral estoppel doctrine requires that "(1) '[t]here . . . be an

identity of issue which has necessarily been decided in the prior action and is decisive of the

present action' and (2) 'there . . . have been a full and fair opportunity to contest the decision now

said to be controlling.'" *Id.* at 794-95 (quoting *Schwartz v. Public Adm'r of Bronx Cnty.*, 24

N.Y.2d 65, 71 (1969)).  A full and fair opportunity to litigate means that the party must have had

the ability to seek appellate review of the adverse decision.  *Id.* at 795.  "Under New York law,

appellate review plays a critical role in safeguarding the correctness of judgments . . . [because] a

party [who] has not had an opportunity to appeal an adverse finding, . . . has not had a full and

fair opportunity to litigate that issue." *Id.* (internal citations omitted).

Under New York law, criminal defendants are not entitled to appeal an

intermediate order denying dismissal of an indictment.  *See People v. Blakley*, 34 N.Y.2d 311,

314 (1974); *People v. Young*, 540 N.Y.S.2d 392 (N.Y. App. Div. 1989) (citing N. Y. Crim. Proc.

§ 450.10).  Where a defendant obtains an adverse, non-appealable interlocutory decision, but is

10

subsequently acquitted, the defendant does not have a full and fair opportunity or incentive to litigate that order and thus it does not have preclusive effect. *See, e.g.*, *Jenkins v. City of New York*, 478 F.3d 76, 92 (2d Cir. 2007) (no collateral estoppel effect accorded findings made during state criminal pretrial hearing where criminal charges were ultimately dismissed; "[t]his rule is predicated on the defendant's lack of an opportunity to obtain review of an issue decided against him") (internal quotation omitted); *Johnson v. Watkins*, 101 F.3d at 796 ("[b]efore the jury's verdict, any appeal of the [s]tate court's ruling of probable cause would have been premature[;] [a]fter final judgment [of acquittal] was entered that issue was moot[;] [t]hus, [the criminal defendant] had neither the opportunity nor the incentive to appeal the adverse finding of probable cause to arrest him . . . [and] appl[ication] [of] the doctrine of collateral estoppel [in subsequent federal Section 1983 case] . . . was error"); *Taylor v. City of New York*, 2006 WL 1699606, *8 (S.D.N.Y. 2006) (no opportunity to fully litigate pretrial finding of probable cause because "[a]fter acquittal, defendant no longer had the opportunity or incentive to appeal the results of the hearing"; thus, collateral estoppel does not apply in subsequent federal Section 1983 case).

In this case, defendants' invocation of the collateral estoppel doctrine is unavailing. Under settled law, Fox's subsequent acquittal renders the doctrine inapplicable.

## B. Particularized Need for Grand Jury Charge

To promote the "time honored policy and strong public interest in maintaining grand jury secrecy," *Ruther v. Boyle*, 879 F. Supp. 247, 250 (E.D.N.Y. 1995) (internal quotation omitted), federal and New York state courts both require "a strong showing of particularized need" before ordering disclosure of grand jury material. *Id.* (citations omitted). This requirement applies to federal civil litigants seeking state grand jury materials. *See Cherry v.*

*Rodenburg*, 2008 WL 4610302, *2 (E.D.N.Y. 2008) (showing of particularized need is required for those seeking disclosure of state grand jury transcripts); *Barnett v. Dillon*, 890 F. Supp. 83, 88 (N.D.N.Y. 1995) ("a federal civil litigant should have access to state grand jury testimony only upon a showing of particularized need").  To demonstrate a particularized need, "the party seeking grand jury material must show (1) that the material they seek is needed to avoid a possible injustice in another judicial proceeding, (2) that the need for disclosure is greater than the need for continued secrecy, and (3) that the request is structured to cover only material so needed."  *Ruther v. Boyle*, 879 F. Supp. at 250 (citing *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 222 (1979)).

        The Supreme Court has articulated the following considerations for a court to weigh in balancing the need for disclosure against the need for continued secrecy:

>  (1) to prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witness who may testify before [the] grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect [an] innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.

*Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. at 219 n.10 (internal quotation omitted). "In particular, the Court has emphasized that secrecy in the grand jury context serves to encourage witnesses to testify freely, without fear of retaliation."  *Anilao v. Spota*, 2013 WL

285394, *11 (E.D.N.Y. 2013).  The court is "imbued with wide discretion" in balancing the need for secrecy against the need for disclosure in individual cases.  *Id.*

Fox seeks disclosure of the grand jury charge in connection with her claim for malicious prosecution.  It is well-settled that "[t]he absence of probable cause is an essential element of a claim for malicious prosecution . . . [and] a grand jury indictment gives rise to a presumption that probable cause exists."  *McClellan v. Smith*, 439 F.3d 137, 145 (2d Cir. 2006). That presumption is rebuttable, however; in order to overcome it, the plaintiff must "establish that the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith."  *Id.* (quoting *Colon v. City of New York*, 60 N.Y.2d 78, 83 (1983)).

Although "[i]t is certainly true that, in malicious prosecution cases where a grand jury indictment has been returned, grand jury minutes may be needed to prove [the] case[, . . .] [a] generalized desire for discovery needed to prove one's case, however, does not constitute the requisite showing of particularized need."  *Alvarado v. City of New York*, 2006 WL 2252511, *3 (E.D.N.Y. 2006); *see also Anilao v. Spota*, 2013 WL 285394 at *13 ("unsealing is not automatically warranted simply because the person requesting disclosure is a malicious prosecution plaintiff"); *Alvarado v. City of New York*, 2009 WL 510813, *2 (E.D.N.Y. 2009) ("[w]here, as here, a request is made to unseal a transcript of the minutes . . . solely to rebut the presumption of probable cause . . . the particularized need standard has not been met") (internal quotations omitted).  Indeed, "[a]uthorizing a fishing expedition based solely on conclusory allegations of misconduct before the grand jury would result in every plaintiff who claimed malicious prosecution being given access to the minutes of the grand jury that voted on the

underlying indictment." *Alvarado v. City of New York*, 2009 WL 510813 at *2.  Rather, "a review of grand jury minutes is rarely permitted without specific factual allegations of government misconduct." *Anilao*, 2013 WL 285394 at *13 (internal quotations omitted).  Thus, in cases involving malicious prosecution, in order to obtain the grand jury transcripts, the plaintiff must "adduce facts that strongly suggest misconduct at the grand jury" or make a "showing of likely success in defeating the presumption of probable cause." *Id.* (quoting *Frederick v. New York City*, 2012 WL 4947806, *9-10 (S.D.N.Y. 2012)).

"The burden of demonstrating that the need for disclosure is greater than the public interest in secrecy is a heavy one, and it rests with the party seeking disclosure." *Id.* at *11.  Indeed, in cases similar to the instant case, courts frequently have denied access to state grand jury minutes on the grounds that the requesting party failed to make the requisite particularized showing that the minutes were necessary to their Section 1983 malicious prosecution claims.  *See*, *e.g.*, *Zomber v. Vill. of Garden City*, 2011 WL 3511011, *5-7 (E.D.N.Y. 2011) (denying access to grand jury testimony and prosecutor's presentation where moving parties failed to show relevance of such material to malicious prosecution claim); *Sclafani v. Spitzer*, 2009 WL 1505276, *2 (E.D.N.Y. 2009) (party who possessed copies of some grand jury testimony made no particularized showing why additional testimony and grand jury material were necessary); *Alvarado*, 2009 WL 510813 at *3 (party failed to show how grand jury materials would assist him in proving claim of malicious prosecution and thus failed to demonstrate particularized need for disclosure); *Cherry v. Rodenburg*, 2008 WL 4610302 at *3-4 (speculative assertions of need for grand jury materials to rebut probable cause presumption insufficient to meet burden of demonstrating particularized need); *Wilson v. City of New York*,

2007 WL 4565138, *2 (E.D.N.Y. 2007) (affirming denial of access to grand jury charge where party failed to make specific allegations of government misconduct); *Barnett v. Dillon*, 890 F. Supp. at 88 (party requesting grand jury testimony to rebut probable cause presumption failed to make showing of particularized need).  Where courts have ordered unsealing, they have done so only upon a strong and particularized showing of necessity.  *See*, *e.g.*, *Anilao*, 2013 WL 285394 at *14-20 (ordering disclosure of grand jury material where state court had issued writ of prohibition against further prosecution of the indictment and where plaintiffs identified specific instances of alleged misconduct before the grand jury); *Frederick v. New York City*, 2012 WL 4947806 at *10, 14 (ordering *in camera* review of one witness's grand jury testimony where party "adduced and corroborated facts that strongly suggest misconduct at the grand jury sufficient to defeat the presumption of probable cause").

        In this case, it bears noting that Fox already has all of the grand jury testimony. Despite that, she seeks disclosure of the grand jury charge in order to attempt to overcome the presumption of probable cause.  She has failed to make *any* showing, however, let alone a *strong* showing that the grand jury charge would assist her in establishing that the indictment was the product of  "fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith."  *See McClellan v. Smith*, 439 F.3d at 146 (quoting *Colon v. City of New York*, 60 N.Y.2d at 83).  Taken alone, the simple fact that the prosecutor, who is not a defendant, may have erroneously instructed the grand jury on the law – even if true – does not support plaintiff's claims of malicious prosecution against the defendants, some of whom testified in the grand jury. *See Wilson v. City of New York*, 2007 WL 4565138 at *2 (affirming denial of access to grand jury instructions on grounds they were irrelevant to malicious prosecution action in absence of

15

allegations of government misconduct); *Alvarado v. City of New York*, 2006 WL 2252511 at *5 (access to grand jury minutes denied because prosecutor's decision as to what evidence to present to grand jury is irrelevant to alleged bad faith of defendant witness).  *Cf. Anilao*, 2013 WL 285394 at *15 (granting access to grand jury materials, including grand jury charge, where prosecutor was alleged to have been involved in conspiracy to maliciously prosecute plaintiff).

Nowhere in Fox's lengthy and reasonably detailed complaint does she allege any facts to suggest that the prosecutor conspired with the defendants or otherwise acted in bad faith to maliciously prosecute Fox.[10]  Nor has she offered any specific factual assertions in her pending motion papers that the prosecutor improperly charged the grand jury.  To infer from the brief exchanges cited by Fox that the District Attorney must have omitted any instruction on the element requiring that the falsification have been conducted with "intent to defraud that includes an intent to commit another crime or to aid or conceal the commission thereof" would amount to speculation.

In any event, nothing in the testimony identified by Fox suggests that Lindenmuth deliberately misled the grand jury on the law or otherwise acted in bad faith.  Indeed, her reply papers characterize, "upon information and belief," the instructions as "incorrect . . . based upon a mistake of the law."  (Docket # 39 at ¶ 29).  This record is simply insufficient to warrant disclosure of the grand jury charge, especially where the state court previously reviewed the grand jury evidence and the charge for legal sufficiency.  *See Wilson*, 2007 WL 4565138 at *2 (speculation that the grand jury would not have indicted if they had been properly instructed

---

[10]  Indeed, Fox concedes in her reply papers that she "has not sought to amend her Amended Complaint to this point to include the District Attorney because she has no basis [in] the alleged facts which would support such a claim."  (Docket # 39 at ¶ 28).

"flies in the face of a finding by [state court judge] who reviewed the Grand Jury minutes and found the indictment against plaintiff supported by legally sufficient evidence"; "[i]n light of [that] finding, there is no reason to suspect that the Grand Jury instructions were inadequate or defective") (internal citation and quotation omitted).  Accordingly, I decline to order the unsealing of the grand jury charge.

### C.  Comity

"In general, requests for disclosure of grand jury materials should be first directed to the court that supervised the grand jury's activities." *Anilao*, 2013 WL 285394 at *9 (citing *Douglas Oil Co. of Cal.*, 441 U.S. at 224-25).  This procedure is grounded in principles of comity designed to ensure that the court which supervised the grand jury has the first opportunity to weigh the need for secrecy against the need for disclosure. *Ruther*, 879 F. Supp. at 250-51.  This procedure is not required in every case, and the proper procedure will vary depending upon the necessity of secrecy and disclosure in, as well as the unique circumstances of, any given case. *See Douglas Oil Co. of Cal.*, 441 U.S. at 231.

Although the parties dispute whether Fox should be required to return to state court to request disclosure of the grand jury charge, that dispute is now immaterial.  In view of this Court's conclusion that Fox has not demonstrated a compelling need for the grand jury charge in this case, no purpose would be served by requiring her to request disclosure of the minutes from the state court. *See Sclafani v. Spitzer*, 2009 WL 1505276 at *2 (denying plaintiffs' application for disclosure of grand jury materials made for first instance before federal court on grounds that plaintiffs failed to demonstrate "particularized need" for disclosure in federal civil rights action); *Wilson*, 2007 WL 4565138 at *2 (same).

## <u>CONCLUSION</u>

For the reasons discussed above, Fox's motion to compel **(Docket ## 35, 37)** is

**DENIED**.

**IT IS SO ORDERED.**


                                               *s/Marian W. Payson*
                                               MARIAN W. PAYSON
                                               United States Magistrate Judge

Dated:  Rochester, New York
          February   12  , 2013

18